UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
DINA CHECK, on behalf of Minor MC,

                      Plaintiff,

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                      Defendant.
-------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y
★ MAY 20 2013 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER ADOPTING THE REPORT AND RECOMMENDATION**

13-cv-791 (SLT) (LB)

**TOWNES, United States District Judge:**

By order to show cause, Dina Check ("Plaintiff") applied for a preliminary injunction to require the New York City Department of Education ("Defendant") to admit her five-year-old daughter to school without her being immunized as required by section 2164 of the New York State Public Health Law. This action was referred to Magistrate Judge Lois Bloom for a ruling. On March 1, 2013, Judge Bloom held a hearing on Plaintiff's application and, on March 22, 2013, she filed a report and recommendation (the "R & R") recommending that Plaintiff's application be denied. Plaintiff filed objections to the R & R on April 12, 2013, to which Defendant did not respond.

Pursuant to 28 U.S.C. § 636(b)(1), this court must make a *de novo* determination of those portions of the R & R to which objections have been made. In light of Judge Bloom's detailed memorandum carefully outlining the underlying facts and legal principles in this case, only a brief exposition of Plaintiff's objections is necessary.

### I. STANDARDS OF REVIEW

A plaintiff seeking a preliminary injunction must demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the

merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *See Christian Louboutin S.A. v. Yves Saint Laurent American Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (internal quotations and citations omitted).

Section 2164 of the New York Public Health Law requires every student to receive certain immunizations before attending "any public, private or parochial child caring center, day nursery, day care agency, nursery school, kindergarten, elementary, intermediate or secondary school." N.Y. Pub. Health L. § 2164(1)(a). The law provides an exemption to this requirement for students whose parents object to the mandated immunizations on religious grounds. *See* N.Y. Pub. Health L. § 2164(9). To qualify for an exemption pursuant to section 2164(9), courts have generally required that a plaintiff demonstrate his or her beliefs are (1) religious, (2) genuine, and (3) sincere. *See Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 427 (E.D.N.Y. 2010).

## II. DISCUSSION

The court presumes familiarity with the factual background in this matter, as detailed in the R & R.

Plaintiff objects only to the portion of the R & R concluding that she has failed to demonstrate a likelihood of success on the merits. More specifically, she disputes the conclusion in the R & R that she failed to establish that she seeks an exemption to immunizations on behalf of her daughter on the basis of "religious" beliefs. On this score, Plaintiff asserts that any medical concerns she may have about vaccines are irrelevant to whether or not her beliefs are sufficiently religious in nature to warrant an exemption under section 2164(9) and should not have been considered by the magistrate judge. The court disagrees. As the district court noted in *Sherr v. Northport-East Northport Union Free Sch.*

2

*Dist.*, "'views founded, upon, for instance, medical or purely moral considerations' fall outside the scope of the exemption provided by section 2164(9)." 672 F. Supp. 81, 92 (E.D.N.Y. 1987). Moreover, "an individual's assertion that the belief he holds [is religious] does not . . . automatically mean the belief is religious." *Mason v. General Brown Cen. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988). Thus, Plaintiff's medical concerns about vaccinations are highly relevant to determining whether her application for a religious exemption is based on religious concerns or medical considerations.

The court also concludes, as Judge Bloom did, that in light of Plaintiff's medical concerns, her refusal to vaccinate her child is based on her belief that vaccines can, and indeed have, caused harm to her child. As succinctly stated in the R & R, "Plaintiff's resolve to protect her child does not constitute a religious belief." (R & R at 12.) At the hearing, Plaintiff discussed the dangers she associates with vaccines, stating that she had conducted research and discovered that there are "chemicals and the toxins that are put into these vaccines. Some are poison to our bodies. Some chemicals, they are manmade." (Tr. at 12, 20-21.)[1] In this regard, she expressed concern that when a child is immunized, a parent is not informed of what ingredients are in the vaccine or where those ingredients came from. (*See id.* at 13 )("[W]hen you go to get these immunizations you are not told what's in them. You are not told what you are putting into your body. They don't come to you and hand you a list."); *id.* at 14 ("When you mix the blood of animals, the blood of beasts with the blood of human, it is defiling the body. You don't do it. You just don't do it. You don't put . . . it's . . . we don't know how this animal was killed, how it was presented forward. We don't know where it came from. We – just don't do it.").) In response to a direct question about why Plaintiff was seeking protection from

---

[1] "Tr." refers to the transcript of the preliminary injunction hearing held before Judge Bloom on March 1, 2013 (Document No. 19).

3

vaccines, she answered,

> It could hurt my daughter. It could kill her. It could put her in anaphylactic shock. It could cause any number of things. A lollipop that you can eat or you can have, anybody in this room could eat a lollipop and they could enjoy the pleasure of this taste. My daughter cannot because she will break out in rashes all over her face and she will break out in rashes through her body. So we do not try to – to just do anything that's unnatural or that could affect her in any way and I'm just using the smallest thing, a lollipop, because I have to use open eyes and open mind and open heart and open spirit with everything that I do to protect this child.

(Id. at 15-16.) And, in later testimony elaborating on how she came to believe that her daughter should no longer be vaccinated, Plaintiff described at length the harmful medical effects that she believes the vaccines have had on her daughter. (Id. at 24-25.) Following a particularly harrowing experience, Plaintiff described herself as putting her "hands in the air and [saying], I am putting this on the Lord. I will not go to and give her any more of these immunizations. I will not listen and I will not do any medication." (Id. at 25.)

That Plaintiff's mistrust of vaccinations is driven by health reasons and not religious conviction is further supported by the documentation that she submitted in support of her lawsuit. In a letter from Plaintiff dated October 26, 2012 outlining why she believes she is entitled to a religious exemption, she wrote, "I am requesting this religious exemption because it is my strong belief that all vaccines are made with toxic chemicals that are injected into the bloodstream by vaccination." (Complaint Ex. 3.) Plaintiff continued that, because her daughter was born with a compromised immune system, she realized that she "had to eliminate solid foods from her [daughter's] diet and put her on . . . an amino acid based formula for her survival. . . . [Plaintiff's daughter's] immune system will not tolerate any artificial sugars or genetically modified foods, medications, etc." (Id.) Moreover, in the Request for Religious Exemption to Immunization Form that Plaintiff provided to Defendant, she stated that she was

4

seeking a religious exemption to immunization because "vaccines are made with toxic chemicals that are injected into the bloodstream by vaccination. All vaccines are made with foreign proteins (viruses and bacteria) and some vaccines are made with genetically engineered viral and bacterial materials." (Complaint Ex. 1.) Under these circumstances, as noted in the R & R, the court concludes that concerns about Plaintiff's daughter's health and safety are the true driving force behind her opposition to immunizing her child.

To be clear, the court expresses no opinion on whether a plaintiff may be entitled to a religious exemption based partially on his or her religious beliefs. Rather, in light of Plaintiff's extensive testimony emphasizing the malignant effects that she believes past vaccinations have had on her daughter, the harmful composition of the vaccinations, and her belief that further vaccinations would physically endanger her daughter, the court concludes only that Plaintiff's aversion to immunization is here based on her conviction that vaccines pose a severe medical risk to her child's welfare. The court in no way means to diminish or minimize Plaintiff's fear of immunization. That fear, however, is not a proper basis for a religious exemption. See Caviezel, 701 F. Supp. 2d at 429 ("The Court finds that one of the reasons [Plaintiff] objects to vaccinations is because it may not be safe . . . Her concern in that regard is real, and understandable, but it is not based on a religious belief.").

To be sure, Plaintiff often refers to God and religion in describing her aversion to immunizations, and Judge Bloom found Plaintiff's testimony regarding her religious beliefs credible and compelling. Indeed, this court has no doubt that Plaintiff is a deeply religious woman whose religion plays an important, and even central, role in her life. However, not every belief held by a religious person is a religious belief. Thus, while Plaintiff's religious beliefs undoubtedly offered her comfort and guidance when her child was ill, as Plaintiff explained in her request for a religious exemption, she turned to holistic medicine, not out of religious

5

devotion or belief, but rather because of a desire to heal her child. (See Complaint Ex. 3 (Plaintiff noting that after antibiotics failed to improver her daughter's condition, she "turned to holistic medicine which has aided in the healing of my daughter. My relationship with the Lord grew stronger through my prayers and guidance from the word of God.").) Plaintiff's desire to protect her child from what she believes will cause her harm is undeniable, but it does not justify a religious exemption. See Sherr, 672 F. Supp. at 91 (noting that section 2164(9) was designed in part to "prevent individuals from avoiding this health requirement enacted for the general welfare of society, merely because they oppose such medical procedures on the basis of personal moral scruples or by reason of unsupported personal fears.") (quotation marks and citation omitted). Accordingly, the court adopts the R & R and denies Plaintiff's application for injunctive relief.

### III. CONCLUSION

The R & R [20] is hereby adopted in its entirety. The court concludes that Plaintiff's aversion to vaccinations for her child stems from her personal fear for her child's well-being and not a religious belief such that she is entitled to a religious exemption. Accordingly, Plaintiff has failed to demonstrate a likelihood of success on the merits and her application for a preliminary injunction [3] is denied.

SO ORDERED.

/s/(SLT)

SANDRA L. TOWNES
United States District Judge

Dated: May 20, 2013
Brooklyn, New York

6